**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:16cr100 |
| ) | |
| BRANDON MATTHEW FLORIN, ) | |
| ) | |
| Defendant. ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by Dana J. Boente, United States Attorney, and Elizabeth M. Yusi, Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. § 3553(a). The government has no objection to the content of the Presentence Investigation Report (PSR). According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G. or "Guidelines") is 168 to 210 months' imprisonment. Based on the nature of the offense, the defendant's characteristics, and history involving child pornography, the United States asks the Court to impose a significant sentence of imprisonment near the low-end of the Guidelines and supervised release. In support of its position, the government states as follows:

**I. BACKGROUND**

On September 20, 2016, defendant BRANDON MATTHEW FLORIN ("defendant" or FLORIN) pleaded guilty to one count of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). The Court is scheduled to sentence the defendant on January 26, 2017.

This investigation of the defendant started on November 26, 2014, when an investigator with the Bedford County Sheriff's Office conducted an investigation into the sharing of images depicting minors engaging in sexually explicit conduct (SEC) on a peer-to-peer file sharing

network. The investigator identified a computer with the IP address 68.10.241.78 ("Target IP") as a computer sharing files of investigative interest because of their unique characteristics associated with images of minors engaging in SEC. On numerous days, the investigator downloaded five files from the Target IP, viewed the files, and confirmed that they depicted images of minors engaging in SEC.

The investigator then determined through a query on a publicly available website that the Target IP was registered to Cox Communications. On January 29, 2015, the investigator submitted an administrative subpoena to Cox Communications. The subscriber's information returned to an address in Virginia Beach, Virginia. Law enforcement later determined the address to be the home of defendant BRANDON MATTHEW FLORIN.

In a subsequent investigation, on February 28, 2016, a detective with the Virginia Beach Police Department (VBPD) conducted an investigation into the sharing of images depicting minors engaging in SEC on a peer-to-peer file sharing network. The VBPD detective identified a computer with the IP address 68.10.208.120 ("Second Target IP") as a computer sharing files of investigative interest. He downloaded a file from the Second Target IP, viewed the file, and confirmed that it depicted an image of minors engaging in SEC.

The VBPD detective determined through a query on a publicly available website that the Second Target IP was registered to Cox Communications. On March 1, 2016, the investigator submitted an administrative subpoena to Cox Communications. The subscriber's information returned to an address in Virginia Beach, Virginia. Law enforcement later determined the address to be the home of defendant BRANDON MATTHEW FLORIN.

On April 6, 2016, law enforcement executed a search warrant at the residence of FLORIN in Virginia Beach. Pursuant to the search warrant, law enforcement seized computers and computer media belonging to FLORIN. At the same time as the search warrant, FLORIN was interviewed by law enforcement. After being administered warnings pursuant to *Miranda*, FLORIN admitted to searching for images of minors engaging in SEC on the Internet and to using peer-to-peer software.

Subsequent to the search warrant, a computer forensic analysis was performed on FLORIN's computers and other computer media. This analysis revealed the presence of well over 2500 videos depicting images of minors engaging in SEC. In fact, there were approximately over 5000 more videos that appeared to be of a similar nature, but the forensic examiner was informed that he did not need to review these additional videos (after he confirmed there were not self-produced) due to resources and time expense. These videos include images of prepubescent minors and numerous video files that contains sadistic or masochistic conduct.

The National Center for Missing and Exploited Children (NCMEC) maintains a database of child pornography images and corresponding child victims who have been previously identified by law enforcement. Each set of images with known victims is designated as a series. The images found on the defendant's computer media were sent to NCMEC. Thereafter, NCMEC provided a report indicating that the defendant's computer media contained approximately 74 video and image files from 48 different known series of child pornography. Some of those known victims have provided impact statements, which were provided to the Court through the U.S. Probation Office.

## II. STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 90. Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49-50. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

### III.  THE GUIDELINES

The defendant may bring attention to concerns about the current state of the Guidelines dealing with child pornography.  Admittedly, there are issues with the child pornography Guidelines, as discussed in the February 2013 Report to Congress by the United States Sentencing Commission.  *See* U.S. Sentencing Commission: Federal Child Pornography Offenses (2013).   However, the Sentencing Commission's report came out February 27, 2013 (the Report), and some of the Guidelines have been updated to correspond to some of the issues. *See* U.S.S.G.  § 2G2.2 (effective Nov. 1, 2016).  Regardless, the Guidelines are still the correct place to start in determining an appropriate sentence for the defendant.

That being said, the government agrees with a number of the Sentencing Commission's conclusions.  For instance, the commission agrees that non-production child pornography offenses are serious crimes (even without further evidence of hands-on crimes).  The Report also states that these are not "victimless" crimes, with which the government whole-heartedly agrees.

The government also agrees that the state of technology and the changes in child pornography "market" has changed child pornography crimes so much that it is not adequately represented by the existing Guidelines.  Specifically, the government believes that the existing Specific Offender Characteristics (SOCs) in the Guidelines may not accurately reflect the seriousness of the offender's conduct nor the various degrees of offender dangerousness.

It is important to note that, regardless of the problems with U.S.S.G. § 2G2.2, the Court should take into account the purpose of the 2003 Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), requiring mandatory minimum sentences of 60 months for distribution or receipt offenses.  The PROTECT Act was, in part, in

response to the trend in district courts to downwardly depart and the general inadequacy of sentences in child pornography cases. *See* H.R. Rep. No. 108-66, 108th Cong., 2nd Sess. 58-59 (2003). The threat posed to children by child pornography trafficking has only increased since passage of the PROTECT Act, as offenders now trade larger quantities of child pornography showing in more frequency images of more explicit conduct and violence conduct toward younger children.

In a March 5, 2013, letter to the United States Sentencing Commission, the Department of Justice (DOJ) recommends revising/maintaining U.S.S.G. § 2G2.2 with respect to the following SOCs:

- Communication/Group Membership: This new SOC would increase the offense level for defendants who communicated or associated with others concerning the sexual abuse or exploitation of a minor. Membership in a group is closely correlated with particularly dangerous, prolific and sophisticated child pornography offenders. Informal communication and participation in these groups validates, normalizes and encourages sexual abuse of minors by other individuals.

- Duration of Conduct: This new SOC would increase punishment for offenders who engaged in repeated and long-term child pornography collecting or trafficking.

- Offender Sophistication: This new SOC would enhance the Guideline range for offenders who used, or advised others, regarding the use of technologies or procedures to evade detection by law enforcement (such as encryption and anonymization). These techniques are frequently used by the most dedicated, sophisticated and dangerous child pornography offenders.

- Pattern of Activity: The current SOC (U.S.S.G. § 2G2.2(b)(5)) should be modified to include conduct that involved only one instance of sexual abuse or sexual exploitation.

- Use of a Computer: The current SOC should be eliminated and replaced with other suggested SOCs.

- Distribution: The SOC should continue to augment the guideline for defendants who distributed images, particularly to a minor (and particularly to a minor in an effort to encourage that minor to engage in sexually explicit conduct).

- Image Severity: This SOC should continue to increase the guideline for material that portrays sadistic and masochistic conduct, and should also inversely correlate punishment severity with the age of the victim depicted (e.g. for images of infants, babies or toddlers).

- Image Quantity: This SOC should continue to tie the guideline range to the quantity of child pornography an offender collects, but the numeric thresholds should be substantially increased for each offense level so as to better distinguish between occasional and habitual collectors.

The government further takes issue with the Report's conclusion that the recidivism rate of child pornography offenders is not particularly high compared to other offenders and that child pornography offenders can be successfully treated. The "known" recidivism rate is just that- "known." It does not account the underreported nature of these offenses because they are in the privacy of a defendant's home and are difficult to detect. Further, the new technology available to prior convicted offenders makes it easier for them to not be detected. There is currently no valid risk assessment study or data applicable to these types of offenders. And, with respect to rehabilitation, similarly there is no conclusive research or data.

Even taking into account DOJ's suggested changes, though, defendant FLORIN deserves a severe sentence of imprisonment well-above the mandatory minimum.

## IV. FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the

Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

      **A.**    **Nature and Circumstances of the Offense and Defendant's History and Characteristics**

The nature of the charge to which the defendant has pleaded guilty, receipt of images of minors engaging in sexually explicit conduct, in and of itself calls for a substantial term of imprisonment. This is not a victimless crime. The victims are and continue to be the children depicted in the images. The "use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child" used in the production of the pornographic material. *Osborne v. Ohio*, 495 U.S. 103, 109 (1990). Furthermore, collecting child pornography images feeds a market that preys upon other children by creating a demand for more of the images. *Osborne v. Ohio*, 495 U.S. 103, 109-11 (1990).

Additionally, the defendant was found to be distributing and collecting videos and images of children being sexually abused over a period of years. The first investigation found him in 2014, the second found him still doing it in 2016. Further, the collection he amassed was huge. Over 8,000 videos of the most vile depictions available- the repeated and explicit sexual abuse of children.

Recent research published in the Journal of Sexual Aggression discussed in detail the dangerousness and risk associated with those that collect child pornography.

> Crimes involving the possession, distribution, or manufacture of child pornography constitute violations of specific laws pertaining to the receipt and transmission of child abuse/exploitation images, and as a result there is a tendency for some individuals to assume these offenders are somehow distinct from child molesters (i.e., "hands-on" abusers). This assumption, in fact, is a key reason

why recent years have seen an increase in judicial sentences that fall below sentencing guidelines (United States Sentencing Commission, 2012), a trend that may be attributable to an impression that the rate of "crossover" between child pornography collection and hands-on abuse is low (Eke & Seto, 2011; Endrass *et al.*, 2009; Seto, Hanson, & Babchishin, 2011).

The logic of this conceptual view is somewhat befuddling. It ignores the observation that individuals who molest children and those who download and masturbate to child pornographic images share a primary motivational pathway - both are sexually aroused by minors (Seto et al., 2006). It therefore should come as no surprise that offenders whose sexual fantasies and urges involve children are able to derive pleasure and gratify their deviant impulses through a variety of means, and it suggests that significant "crossover" may exist between these crimes.

Although some research (Elliott, Beech, Mandeville-Norden, & Hayes, 2009; Howitt & Sheldon, 2007; Webb, Craissati, & Keen, 2007) has shown differences between groups of "online" and "offline" offenders, most is limited by an important assumption; that is, an individual is a hands-off offender simply because official records do not reflect contact sexual offending. This assumption appears unwise, given the base rates for detecting sexual abuse are extraordinarily low, the finding that most victims of abuse never report their victimization to law enforcement, and the low percentage of arrests leading to convictions (Centres for Disease Control and Prevention, 2010; National Centre for Policy Analysis, 1999; US Department of Justice, 2010, 2012). Researchers should never assume an offender has not committed a hands-on crime merely because his or her criminal record does not reflect such a charge or conviction.

In an interesting study by Buschman et al. (2010), which unfortunately has a small sample size, data were collected from Dutch offenders who had downloaded child pornography. The researchers were able to ensure that disclosures would not be used against the offenders in court-immunity that obviously facilitated more complete honesty. Self-report and post-polygraph confessions were compared, and researchers found that while the majority of participants (21 of 25) initially denied any high-risk behaviours towards children in their self-report, following polygraph examination many offenders admitted they had engaged in such acts, and five participants acknowledged they had a plan to sexually abuse children if the opportunity arose.[1]

---

[1] M.L. Bourke, et. al., "The use of tactical polygraph with sex offenders," *Journal of Sexual Aggression* (2014), p. 5-6. For the Court's convenience, this study has been attached as Exhibit 1.

9

This study goes on to describe its own processes as well as results. The study was comprised of 127 persons under investigation for the possession, receipt, or distribution of child pornography who agreed to take a polygraph examination regarding their hands-on activity.[2] These individuals had no known history of hands-on offending.[3] Six individuals (4.7%) admitted to sexually abusing at least one child *prior* to the polygraph.[4] However, during the polygraph procedures, an additional 67 individuals (52.8%) of the study sample provided disclosures about hands-on abuse they had perpetrated. That means a total of 57.7% of the sample admitting to *previously undetected hands-on sexual offenses*.[5] For children and judges, that is worse odds than a coin-toss. Even more shocking is the total number of hands-on victims for these 73 individuals: 282 children, nearly four per offender.[6]

This study is important because it supports the results of prior studies, i.e., that child pornography offenders have high rates (as high as 85%) of previously unreported sexual offenses

---

[2] *Id*. at 8.

[3] *Id*.

[4] *Id*.

[5] *Id*.

[6] *Id*. at 9, Table I.

against children.[7] This should come as little surprise, as other studies that relied solely upon prior official reports (arrests or convictions) showed a 20-28% association between child pornography offenses and contact sex offenses.[8] A defendant's argument that less dangerous people commit Internet child pornography offenses flies in the face of the empirical science.

As an additional indicator of the dangerousness of these offenders, there is the very real effect that consumers, like FLORIN, have had on the producers of child pornography.[9] "[I]n recent years there has been an increase in the frequency with which particularly violent images

---

[7] Michael L. Bourke & Andres E. Hernandez, "The 'Butner Study' Redux: A Report on the Incidence of Hands-On Child Victimization by Child Pornography Offenders," 24 J. FAM. VIOLENCE 183 (2009) (study of 155 federal child pornography offenders in the United States who participated in the residential sex offender treatment program at FCI Butner from 2002–05; finding that official records, including the offenders' presentence reports in their child pornography cases, revealed that 26% had previously committed a contact sex offense, yet finding that "self reports" of the offenders in therapy revealed that **85% had committed prior "hands on" sex offenses**)(emphasis added); *see also* United States Sentencing Commission "Report to Congress: Federal Child Pornography Offenses," (2012) Ch. 7, p. 173 ("The six self-report studies taken together reported a rate of **55 percent**.").

[8] Janis Wolak et al., "Child Pornography Possessors: Trends in Offender and Case Characteristics," 23 SEXUAL ABUSE 22, 33–34 (2011) (finding, based on 2006 data from surveys of approximately 5,000 law enforcement officials throughout the United States, that 21% of cases that began with investigations of child pornography possession "detected offenders who had either committed concurrent sexual abuse [offenses] or been arrested in the past for such crimes"); Richard Wollert et al., "Federal Internet Child Pornography Offenders — Limited Offense Histories and Low Recidivism Rates," in THE SEX OFFENDER: CURRENT TRENDS IN POLICY & TREATMENT PRACTICE Vol. VII (Barbara K. Schwartz ed., 2012) (based on a study of 72 federal child pornography offenders in the United States who were treated by the authors during the past decade, the authors found that 20, or 28%, had prior convictions for a contact or non-contact sexual offense, including a prior child pornography offense).

[9] *United States v. Regan*, 627 F.3d 1348, 1355 (10th Cir. 2010) (affirming guideline sentence) ("Because child pornography promotes the victimization of children, individuals like Regan create a demand for its further production and abuse of children, even if their conduct is purely voyeuristic. Moreover, the volume of images in Regan's possession, including the images which conformed to the Guideline definition of sadistic or masochistic conduct, increased the seriousness of his offense).

and images of younger children are found in offender collections."[10] FLORIN's collection was no exception, as it included bondage and prepubescent children. PSR, ¶ 12.

This trend towards violence is driven by consumers like FLORIN. This is reflected in the prevalence of the 2G2.2(b)(4) violence and sadism Special Offense Characteristic (SOC) appearing in a high number of cases. However, the prevalence of that SOC should not be met with "It appears so frequently, I should ignore it." Indeed, quite the opposite response should occur. As has been said by another district court, "There can be no keener revelation of a society's soul than the way in which it treats its children…Given the recent statistics surrounding child pornography, we are living in a country that is losing its soul." *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010).

The United States does not ask the Court to use the Bourke study, or any of the studies discussed, as proof of uncharged crimes. However, the United States asks the Court to find that these studies highlight the seriousness of the offense. These studies indicate a lengthy and substantial sentence for the defendant is appropriate given the dangerousness of the offense and the defendant.

### B.    Defendant's Criminal History

The defendant has no relevant criminal history. However, as this Court knows, this is not unusual in child pornography cases and should not be given much weight in the Court's determination of a sentence. This is a young man who had a lucrative career, a supportive

---

[10] United States Sentencing Commission "Report to Congress: Federal Child Pornography Offenses," (2012), Ch. 4, p. 85. Available online at: http://www.ussc.gov/news/congressional- testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses

family, yet still spent years collecting images of child sexual abuse. The fact that he has little criminal history resembles most of the other defendants that have been before this Court; whereas his education, career and upbringing may set him apart.

### C. Need to Deter Future Criminal Conduct and to Protect the Public

Defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public. The government avers that, if given the opportunity, the likelihood that FLORIN will return to this predatory behavior in the future is strong due to length of criminal activity and the mass of his collection. This Court needs to protect society as well as send a message that this criminal activity is not acceptable. As such, a lengthy sentence is appropriate.

### D. Need to Provide Treatment to Defendant

Due to the nature of the defendant's crimes, the defendant should be ordered to participate in a sex offender treatment program while incarcerated, along with substance abuse counseling and treatment.

### E. Need to Avoid Unwarranted Sentencing Disparities

FLORIN' crimes, history and characteristics, along with his actions related to the crimes of conviction, all support a severe sentence of imprisonment. This Court routinely sentences defendants for receipt of child pornography in a stern fashion. *See, e.g. United States v. Gayer*, 4:12cr2, (J. Davis) (102 months and 10 years supervised release for downloading images from website). And, many times when this Court has sentenced defendants to well below the Guidelines, the defendants had well-documented mental illness and/or extremely troubling childhoods. *See, e.g. United States v. Justin Clark*, 2:15cr150 (J. Allen) (72 months and 20 years

supervised release for trading images on KIK); *United States v. William Clark*, (2:15cr87) (J. Allen) (72 months and 20 years supervised release for downloading images from newsgroups and not distributing any images.) These other cases did not involve a defendant with seemingly little or no "excuse," if there ever is such a thing in these cases, to have ended up in such a despicable hobby. As such, the need to avoid unwarranted sentence disparities clearly weighs in favor of a sentence near the low-end of the recommended Guidelines. 18 U.S.C. § 3553(a)(6).

## V. CONCLUSION

The government agrees that the PSR's Guidelines calculations are correct. For the reasons stated above, the government asks the Court to impose a significant sentence of imprisonment near the low-end of the Guidelines and supervised release.

DANA J. BOENTE
UNITED STATES ATTORNEY

By: /s/ Elizabeth M. Yusi
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: elizabeth.yusi@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of January 19, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Shawn M. Cline, Esq.

I FURTHER CERTIFY that on this 19th day of January 19, 2017, I caused a true and correct copy of the foregoing Position of the Government with Respect to Sentencing Factors to be e-mailed to the following:

Leah Greathouse
U.S. Probation Officer

/s/ Elizabeth M. Yusi
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: elizabeth.yusi@usdoj.gov